# In re Gonzalo PALACIOS-Pinera - Respondent

## File A90 284 849 - Anchorage

*Decided December 18, 1998*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

An alien who was convicted of arson in the first degree under the law of Alaska and sentenced to 7 years' imprisonment with 3 years suspended was convicted of a "crime of violence" within the meaning of section 101(a)(43)(F) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(43)(F) (Supp. II 1996), and therefore is deportable under section 237(a)(2)(A)(iii) of the Act, 8 U.S.C. § 1227(a)(2)(A)(iii) (Supp. II 1996), as an alien convicted of an aggravated felony.

Mara Kimmel, Esquire, Anchorage, Alaska, for respondent

Dorothy Stefan, District Counsel, for the Immigration and Naturalization Service

Before: Board En Banc: SCHMIDT, Chairman; DUNNE, Vice Chairman; VACCA, HEIL-MAN, HOLMES, HURWITZ, VILLAGELIU, COLE, MATHON, GUENDELS-BERGER, JONES, GRANT, and SCIALABBA, Board Members, Dissenting Opinion: ROSENBERG, Board Member.

VACCA, Board Member:

In a decision dated November 19, 1997, an Immigration Judge found the respondent deportable as charged, determined that he was not eligible for relief from removal, and ordered him removed from the United States. The respondent subsequently filed this appeal. The appeal will be dismissed.

## I. HEARING BELOW

The record reflects that the respondent was admitted to the United States as a lawful permanent resident on or about April 24, 1990. On July 19, 1995, the respondent was convicted of arson in the first degree in violation of section 11.46.400(a) of the Alaska Statutes. He was sentenced to

serve 7 years' imprisonment with 3 years suspended. Based on this conviction, the Immigration and Naturalization Service issued a Notice to Appear (Form I-862), charging that the respondent was deportable under section 237(a)(2)(A)(iii) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(A)(iii) (Supp. II 1996), as an alien convicted of an aggravated felony.

In proceedings before an Immigration Judge the respondent admitted the allegations contained in the Notice to Appear, but contested the ground of deportability. The Immigration Judge determined, after examining the circumstances underlying the conviction, that the respondent had been convicted of an aggravated felony, a crime of violence, within the meaning of section 101(a)(43)(F) of the Act, 8 U.S.C. § 1101(a)(43)(F) (Supp. II 1996). Thus, he found the respondent deportable as charged and ineligible for any relief from removal from the United States.

## II. APPELLATE ARGUMENTS

On appeal, the respondent contends that the Immigration Judge erred in finding that his conviction for arson in the first degree under section 11.46.400(a) of the Alaska Statutes is a "crime of violence," as defined in 18 U.S.C. § 16 (1994). He further contends that the Immigration Judge erred in considering the specific circumstances of his offense.

In response, the Service supports the Immigration Judge's findings and urges this Board to adopt the Immigration Judge's decision.

## III. THE RESPONDENT'S CONVICTION

The respondent was convicted under section 11.46.400 of the Alaska Statutes, which provides:

Arson in the first degree.

 (a) A person commits the crime of arson in the first degree if the person intentionally damages any property by starting a fire or causing an explosion and by that act recklessly places another person in danger of serious physical injury. For purposes of this section, "another person" includes but is not limited to fire and police service personnel or other public employees who respond to emergencies, regardless of rank, functions, or duties being performed.

 (b) Arson in the first degree is a class A felony.

Alaska Stat. § 11.46.400 (Michie 1994).

## IV. CRIME OF VIOLENCE UNDER 18 U.S.C. § 16

Section 101(a)(43)(F) of the Act, as it applies to the respondent, defines an "aggravated felony" as "a crime of violence (as defined in section 16 of title 18, United States Code, but not including a purely political offense) for which the term of imprisonment [is] at least 1 year." The term "crime of violence" is defined in 18 U.S.C. § 16 as

(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

In determining whether a particular offense is a "crime of violence" under this definition, we have held that either the elements of the offense must be such that physical force is an element of the crime, or that the nature of the crime—as evidenced by the generic elements of the offense—must be such that its commission ordinarily would present a risk that physical force would be used against the person or property of another, irrespective of whether the risk develops or harm actually occurs. *Matter of Alcantar*, 20 I&N Dec. 801 (BIA 1994). In using the "generic" or "categorical" approach, we have stated:

[A]nalysis under 18 U.S.C. § 16(b) requires first that the offense be a felony; and, if it is, that the "nature of the crime — as elucidated by the generic elements of the offense — is such that its commission would ordinarily present a risk that physical force would be used against the person or property of another" irrespective of whether the risk develops or harm actually occurs.

*Id.* at 812; *see also United States v. Jackson*, 986 F.2d 312 (9th Cir. 1993); *United States v. Sherman*, 928 F.2d 324 (9th Cir.), *cert. denied*, 502 U.S. 842 (1991). Stated differently, "'Offenses within the scope of section 16(b) have as a commonly shared characteristic the potential of resulting in harm.'" *Matter of Alcantar*, *supra*, at 809 (quoting *United States v. Gonzalez-Lopez,* 911 F.2d 542, 547 (11th Cir. 1990), *cert. denied,* 500 U.S. 933 (1991)).

This approach does not extend, however, to consideration of the underlying facts of the conviction. *Matter of Alcantar, supra*, at 813. Consequently, for the respondent's crime to fall within the purview of 18 U.S.C. § 16(b), it must be an offense for which the nature of the crime involves a substantial risk that physical force may be used against the person or property of another during the commission of the offense; in other words, the crime must have "the potential of resulting in harm." *Id.* at 809.

## V. NATURE OF THE RESPONDENT'S OFFENSE

In this case, we find that the respondent's conviction satisfies the test articulated at 18 U.S.C. § 16(b). However, we initially note that the Immigration Judge considered the underlying facts of the respondent's conviction in determining that the crime fell within the purview of 18 U.S.C. § 16(b). Therefore, we find it necessary to make an independent determination as to whether the respondent's offense involves a substantial risk that physical force may be used against the person or property of another during the commission of the offense.

We find that the respondent's act of arson in the first degree, by its very nature, requires a substantial risk of physical force against another person or property. *See United States v. Mitchell*, 23 F.3d 1 (1st Cir. 1994) (finding that conspiracy to commit arson and aiding and abetting arson are crimes of violence under 18 U.S.C. § 1356); *United States v. Marzullo*, 780 F. Supp. 658, 661 (W.D. Mo. 1991) (finding that arson is a crime of violence against both person and property under 18 U.S.C. §§ 3156(a)(4)(A) and (B)); *United States v. Shaker*, 665 F. Supp. 698 (N.D. Ind. 1987) (finding that arson under 18 U.S.C. § 844(i) is a crime of violence against both person and property under 18 U.S.C. §§ 3156(a)(4)(A) and (B)); *cf. United States v. Lee*, 726 F.2d 128, 131 (4th Cir.) (noting that arson was a crime of violence under 18 U.S.C. § 1952(a)(2)), *cert. denied*, 467 U.S. 1253 (1984). First, we note that the intentional starting of a fire or causing an explosion ordinarily would lead to the substantial risk of damaging property of another. Not only is there a risk to items belonging to others that are on or in the property, i.e., such as items left in a store, there always exists the risk that the fire will spread beyond the original intended property. Secondly, since there is a risk that the fire or explosion will encroach upon another structure and that structure may be occupied, arson involves a substantial risk to another person. Moreover, there is a real risk that the people responding to the fire, i.e., public employees who respond to emergencies, will be injured while extinguishing the fire or investigating the fire scene.

Accordingly, we find that the respondent's conviction for arson in the first degree under Alaska law is for a "crime of violence" within the meaning of 18 U.S.C. § 16, and, correspondingly, is an aggravated felony under section 101(a)(43)(F) of the Act. *Matter of Alcantar, supra.*

## VI. CONCLUSION

Upon our independent review of this case, we find that the respondent is deportable as an alien convicted of an aggravated felony. Furthermore, we find that the respondent is ineligible for relief from removal. Accordingly, the appeal will be dismissed.

**ORDER:** The appeal is dismissed.

Board Member Lauri S. Filppu did not participate in the decision in this case.

*DISSENTING OPINION:* Lory Diana Rosenberg, Board Member

I respectfully dissent.

I disagree that the respondent's conviction for "arson in the first degree" under section 11.46.400 of the Alaska Statutes is a felony that necessarily constitutes a crime of violence under section 101(a)(43)(F) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(43)(F) (Supp. II 1996). It is not enough that the record reflects that the respondent, who is alleged to have been convicted of "a crime of violence," has been convicted of an offense that we consider onerous or that might sound as though it would be an aggravated felony. Rather, the record must reflect that the Immigration and Naturalization Service established by clear and convincing evidence that the specific offense for which the respondent was convicted *is an aggravated felony as defined in section 101(a)(43) of the Immigration and Nationality Act*, *See* section 237(a)(2)(A)(iii) of the Act, 8 U.S.C. § 1227(a)(2)(A)(iii) (Supp. II 1996); *see also* section 101(a)(43)(F) of the Act (listing a "crime of violence" as an aggravated felony); section 240(c)(3)(A) of the Act, 8 U.S.C. 1229a(c)(3)(A) (Supp. II 1996) (specifying the burden of proof).

The principal issues before us are whether "arson" is a crime of violence as defined in section 101(a)(43)(F) of the Act, according to either subsection (a) or (b) of 18 U.S.C. § 16, and if so, whether "arson in the first degree" as defined by the Alaska statute under which the respondent was convicted constitutes such "arson." The determination of these issues of first impression goes directly to the ultimate question of whether the respondent is removable as charged.[1]

Although these are issues which have been squarely raised and argued by the respondent on appeal, I do not believe that we have adequately addressed them. Furthermore, I cannot agree that the majority has satisfactorily specified the reasoning underlying its conclusion that the respondent is removable as charged, *See, e.g., Rust v. Sullivan*, 500 U.S.

---

[1]The issue of whether the respondent is removable as an aggravated felon is one within the jurisdiction of the federal courts to review a final order of removal, *See* section 242(a)(2)(C) of the Act, 8 U.S.C. § 1252(a)(2)(C) (Supp. II 1996) (restricting review of "any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in section . . . 237(a)(2)(A)(iii)"); *see also Magana-Pizano v. INS*, 152 F.3d 1213 (9th Cir. 1998); *Coronado-Durazo v. INS*, 123 F.3d 1322 (9th Cir. 1997); *Valderrama-Fonseca v. INS*, 116 F.3d 853 (9th Cir. 1997).

173, 184-85 (1991) (addressing the deference due a reasoned analysis of a particular agency interpretation); *Santana-Figueroa v. INS*, 644 F.2d 1354, 1356 (9th Cir. 1981) (finding affirmance improper when it frees the Board of the obligation to articulate a reasoned basis for its decisions, eliminating any guaranty of rationality and foreclosing meaningful review for abuse of discretion); *see also Matter of M-P-*, 20 I&N Dec. 786 (BIA 1994) (requiring that the Immigration Judge, in the interest of fundamentally fair proceedings, provide a reasoned decision for denial of a motion to reopen). Therefore, I dissent.

## I. PRELIMINARY PROCEDURAL AND FACTUAL CONSIDERATIONS

The respondent is a Mexican national who has resided in Alaska since 1978 and became a lawful permanent resident on May 4, 1990. He was convicted of arson in the first degree under the Alaska statute on July 19, 1995, and was charged with being subject to removal on the ground that he is deportable as an alien convicted of an aggravated felony on April 24, 1997.

### A. Notice To Appear

The record contains substantive and procedural defects beginning with the Notice to Appear. First, in charging the respondent with being removable on account of having been convicted of an offense alleged to be an aggravated felony, the Service has failed to specify under which of the more than 20 subsections of section 101(a)(43) of the Act, many containing internal subdivisions, they contend the respondent is deportable and subject to removal, *Cf. Matter of Ducret*, 15 I&N Dec. 620 (BIA 1976) (stating that in the absence of an appropriate charge, there is no basis either to make a specific finding of deportability or to speculate as to other possible grounds of deportability, even though such grounds might exist).

The respondent is entitled to be given reasonable notice of the charges against him. *See* sections 239(a)(1), 240(a)(2), (b)(4)(B) of the Act, 8 U.S.C. §§ 1229(a)(1), 1229a(a)(2), (b)(4)(B) (Supp. II 1996); *see also* 8 C.F.R. § 240.10(a)(6) (1998) (requiring the Immigration Judge to explain the charges in the Notice to Appear to the respondent in nontechnical language); *Matter of Batista-Hernandez*, 21 I&N Dec. 955 (BIA 1997) (Rosenberg, concurring in part and dissenting in part). The Service should have charged the respondent under the particular subsection or subsections of the aggravated felony definition that the Service intended to rely on to prove he was deportable, *Matter of Liburd*, 15 I&N Dec. 769, 770 (BIA 1976) (emphasizing that "[a]n alien is entitled to know the ground upon which his deportation is being sought"); *Matter of Siffre*, 14 I&N Dec. 444

(BIA 1973) (involving a "remained longer" charge brought during the respondent's authorized period of temporary stay, which presumably was based on his alleged failure to maintain nonimmigrant status).

Second, in asserting that the respondent was convicted of arson in the first degree, the Service alleged that "[f]or that offense imprisonment of five years or more may be imposed," and went on to charge the respondent as being removable under section 237(a)(2)(iii) of the Act for having been convicted of an aggravated felony. If, as it appears, the Service intended to charge the respondent with being removable on the basis of his deportability for a crime of violence, it should have alleged that the respondent actually was sentenced to a "term of imprisonment for at least one year," which is a specific element of that particular aggravated felony ground of deportability, Section 101(a)(43)(F) of the Act.

An alien in deportation proceedings is to be afforded due process under the Constitution. *See Mathews v. Diaz*, 426 U.S. 67, 77 (1976); *Wong Yang Sung v. McGraff*, 339 U.S. 33, *modified on other grounds*, 339 U.S. 908 (1950); *Bridges v. Wixon*, 326 U.S. 135, 154 (1945) (stating that deportation "visits a great hardship on the individual and deprives him of the right to stay and live and work in this land of freedom. . . . Meticulous care must be exercised lest the procedure by which he is deprived of that liberty not meet the essential standards of fairness."). Fortuitously, the respondent here appears to be ably assisted by counsel, and the defects in the Notice to Appear do not appear to leave either the respondent or the Immigration Judge to guess the Service's theory of the case or to inhibit the respondent's exercise of his statutory or due process hearing rights.

Therefore, in this instance, I do not find the respondent was prejudiced by the Service's failure to specifically charge the respondent with a crime of violence, or by the inaccuracies in the Notice to Appear, Such a "shoddy process," however, is generally unacceptable. *See Montecino v. INS*, 915 F.2d 518, 521 (9th Cir. 1990). I emphasize that meaningful notice and a fair hearing are all that stand between the respondent and removal from a country in which he has lived for 20 years; if the statute and the regulations are to mean anything, they must be observed regularly, not incidentally.

## B. Evidence and Arguments Presented by the Parties

The Service filed a number of exhibits in the proceedings below, consisting primarily of copies of the respondent's criminal records. For purposes of our review in the instant appeal, the relevant documents include one entitled "Judgement and Order of Commitment/Probation." I note that this document appears to be properly certified as a true and correct copy by the clerk of the Alaskan Superior Court, as required by section 240(c)(3)(B) of the Act to prove a conviction. The record contains an "Indictment" that also is duly certified, which essentially tracks the language of the statute. *Id.*

The record also contains an "Information," detailing some of the underlying facts pertaining to the respondent's offense. However, this document is little more than a summary of two investigative reports containing the district attorney's sworn statement that "the following Information is based on my partial review of Anchorage Fire Department report number 94-4882 and . . . 94-115125." We ordinarily do not consider such investigative reports in determining whether the respondent is deportable as charged. *See Matter of Teixiera*, 21 I&N Dec. 316 (BIA 1996) (holding that a police report is not part of a "record of conviction," nor does it fit any of the regulatory descriptions found at 8 C.F.R. § 3.41 (1995) for documents admissible to prove a criminal conviction); *see also Matter of Madrigal*, 21 I&N Dec. 323 (BIA 1996) (citing *Matter of Rodriguez-Cortes*, 20 I&N Dec. 587 (BIA 1992), and broadening the definition of the record of conviction to include the transcript of proceedings); *Matter of Short*, 20 I&N Dec. 136 (BIA 1989).

Moreover, I agree with the majority that the "underlying facts" are *not* appropriately considered in determining whether a conviction is a "crime of violence." *Matter of Alcantar*, 20 I&N Dec. 801, 812 (BIA 1994). As discussed below, even were we to consider the contents of the "information," the respondent's conviction for setting fire to his own couch and possessions in an apparent suicide attempt is not necessarily a conviction that involves a substantial risk that the offender may use physical force against the person or property of another "*in the course of committing the offense*" as required under 18 U.S.C. § 16, (Emphasis added.)

The respondent, through counsel, submitted a trial brief in support of his motion to terminate proceedings. Subsequently, the respondent filed a Notice of Appeal, followed by an appellate brief, asserting specifically that the Immigration Judge's decision that the crime of arson in the first degree involves physical force and constitutes a crime of violence is erroneous. He argues squarely that the Immigration Judge erred in looking to the facts underlying his conviction, rather than considering the crime of arson in the first degree, as defined under the Alaska statute, in relation to a generic definition of arson. He asserts further that first degree arson under the Alaska statute does not require proof of the use of physical force to sustain a conviction, nor by its nature is it a crime of violence as defined in the Act. The Service did not file a reply brief in support of its original allegations and charges, or the finding of the Immigration Judge that the crime of arson in the first degree under the Alaska statute constitutes an aggravated felony.

### C. Immigration Judge Decision

The Immigration Judge found the respondent removable as charged. As reasoning for his decision, he opined that the respondent took too narrow a view of 18 U.S.C. § 16(b), stating that the destruction of property was a

most telling use of "destructive physical force." As noted by the majority, the Immigration Judge inappropriately took the facts underlying the respondent's conviction into account. He did not, moreover, analyze the Alaska statute according to a generic or categorical definition of arson, *Cf. Matter of Alcantar, supra*, at 812-13.

## II. STANDARDS UNDER THE CONTROLLING REMOVAL STATUTE

At the outset, I find that the evidence is not at all *clear* and *convincing* that, as a matter of fact and law, the respondent was convicted of a crime of violence or any other offense that would constitute an aggravated felony under the statute. *See* sections 101(a)(43), 237(a)(2)(A)(iii), 240(c)(3)(A) of the Act; *Matter of Batista-Hernandez, supra; see also Matter of S-S-*, 21 I&N Dec. 121 (BIA 1997). This does not mean that the respondent was not convicted, that he may not be removable on another ground, or that the criminal conduct underlying his conviction is not egregious. It means that he is not removable as charged by the Service in the Notice to Appear, and that the record presented does not support our sustaining the conclusion of the Immigration Judge that he is so removable.

### A. Burden of Proof

In a removal proceeding involving a charge of deportability against an alien who has been admitted to the United States, the burden of proof is on the Service to demonstrate by clear and convincing evidence that the respondent is deportable as charged and removable from the United States. *See* section 240(c)(3)(A) of the Act. Although the record contains evidence that the respondent was convicted of "arson in the first degree," it does not contain clear and convincing evidence that arson in the first degree under the Alaska statute constitutes a crime of violence as defined under 18 U.S.C. § 16(a) or (b), *See* section 101(a)(43)(F) of the Act.

Without clear and convincing evidence that the respondent is deportable as charged, the record lacks the reasonable, substantial and pro-bative evidence (required to support a "decision on deportability [that is] valid") necessary to support the finding of the Immigration Judge that he is removable. *See* section 240(c)(3)(A) of the Act; 8 C.F.R. §§ 240.8, 240.10(c) (1998). A gross miscarriage of justice would exist were the respondent to be removed for an offense that did not constitute the ground of deportation charged and warrant removal, *Matter of Malone,* 11 I&N Dec. 730 (BIA 1966) (involving an appeal that was filed and withdrawn); *see also Matter of Roman,* 19 I&N Dec. 855 (BIA 1988) (citing *Matter of Farinas*, 12 I&N Dec. 467, 472 (BIA 1967), which held that "the decision

in respondent's case could not have withstood judicial attack under the law as it was then (and still is) interpreted . . . and the validity of the deportation order can and must be examined").

## B. Adjudication According to a Federal Standard

The Board has held consistently that interpreting the deportation grounds of the Act according to a uniform federal standard is an appropriate and fair method of reading and applying the statute. We have looked both within and outside the Act for authority and guidance in construing state convictions under an appropriate federal standard. *See, e.g., Matter of L-G-*, 21 I&N Dec. 89 (BIA 1995) (analyzing the term "any felony" in 18 U.S.C. § 924(c)(2) (1994) to identify the range of state convictions capable of being characterized as drug-trafficking offenses under section 101(a)(43)(B) of the Act); *Matter of Manrique*, 21 I&N Dec. 58 (BIA 1995) (adopting the federal standard as articulated by the United States Court of Appeals for the Ninth Circuit in *Garberding v. INS*, 30 F.3d 1187 (9th Cir. 1994), to require a comparison of the terms of individual state laws with those in 18 U.S.C. § 3607 when determining whether a conviction exists or has been expunged); *Matter of Ozkok*, 19 I&N Dec. 546 (BIA 1988) (citing *Matter of A-F-*, 8 I&N Dec. 429, 466 (BIA, A.G. 1959), and acquiescing to the federal policy to treat narcotics offenses seriously and finding it inappropriate for an alien's deportability for criminal activity to be dependent upon "the vagaries of state law"); *Matter of O-*, 7 I&N Dec. 539 (BIA 1957) (recognizing the need for a federal standard for a final conviction); *see also Matter of Punu*, 22 I&N Dec. 224 (BIA 1998) (finding the specific definition of a conviction now articulated in section 101(a)(48)(A) of the Act to supersede the prior federal standard for a conviction that we had developed in *Matter of Ozkok, supra*).

As stated in *Matter of Alcantar, supra*, assessing an offense according to a categorical or generic definition to determine whether or not there has been a conviction for a particular type of crime is consistent with the approach taken by the Supreme Court of the United States in *Taylor v. United States*, 495 U.S. 575 (1990) (holding that a state conviction for burglary only constitutes a "violent felony" offense for purposes of 18 U.S.C. § 924(e) when the statutory definition of the state offense substantially corresponds to the generic federal definition for burglary). The Supreme Court in *Taylor* emphasized that, absent any plain indication to the contrary, federal laws are not to be construed so that their application is dependent on state law, *Taylor v. United States, supra*, at 592 (stating that "'burglary' in § 924(e) must have some uniform definition independent of the labels employed by the various states' criminal codes"); *United States v. Nardello*, 393 U.S. 286, 293-94 (1969) (stating that it was a fallacy to presume that in a federal act, Congress would incorporate state labels for particular offens-

es or give controlling effect to state classifications); *see also United States v. Sherbondy*, 865 F.2d 996, 1004-05 (9th Cir. 1988).

This is consistent with the longstanding judicial recognition that federal law must control in the enforcement of our immigration laws, reaffirmed most recently by the First, Second, Fourth, Fifth, Ninth and Eleventh Circuits. *See, e.g., Aguirre v. INS*, 79 F.3d 315 (2d Cir. 1996); *Wilson v. INS*, 43 F.3d 211 (5th Cir.), *cert. denied*, 516 U.S. 811 (1995); *Paredes-Urrestarazu v. INS*, 36 F.3d 801 (9th Cir. 1994); *Yanez-Popp v. INS*, 998 F.2d 231 (4th Cir. 1993) (following the general proposition in *Dickerson v. New Banner Institute*, 460 U.S. 103 (1983), that the determination whether a conviction exists for purposes of federal gun control laws is a question of federal, not state law, despite the fact that the predicate offense and its punishment are defined by state law); *Molina v. INS*, 981 F.2d 14 (1st Cir. 1992); *Chong v. INS*, 890 F.2d 284 (11th Cir. 1989); *see also Rehman v. INS*, 544 F.2d 71 (2d Cir. 1976) (noting that deportation laws would not be undermined by recognition of state policy similar to federal leniency policies); *Aguilera-Enriquez v. INS*, 516 F.2d 565 (6th Cir. 1975) (emphasizing federal standard for finality of conviction), *cert. denied*, 423 U.S. 1050 (1976); *Will v. INS*, 447 F.2d 529 (7th Cir. 1971) (same).

The specific principle that a federal standard should be employed in defining what constitutes an aggravated felony conviction under the many subsections of section 101(a)(43) of the Act and related provisions has been followed by both the Board and the federal courts. *See, e.g., Matter of Alcantar, supra*, at 812 (invoking the Supreme Court decision in *Taylor v. United States, supra*, to adopt a categorical approach to determining what constitutes a crime of violence under 18 U.S.C. § 16); *see also Matter of Magallanes*, 21 I&N Dec. 1 (BIA 1998); *Matter of Batista-Hernandez, supra; Matter of B-*, 21 I&N Dec. 287 (BIA 1996); *Matter of S-S-, supra; Matter of L-G-, supra* (followed in *Aguirre v. INS, supra*). This approach has been endorsed as recently as 1996 in the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546, in which Congress amended the Act expressly to provide a federal definition of "conviction" and "sentence" within the Act itself, *See* sections 101(a)(48)(A), (B) of the Act; *Matter of Punu, supra*.

The need to adopt a uniform federal standard exists here, as neither section 101(a)(43)(F), nor 18 U.S.C. § 16, to which it refers, specifies a particular federal definition of "arson," per se, that constitutes a crime of violence, *Cf.* United States Sentencing Guidelines § 4B1.2(a)(2) (1998) ("U.S.S.G."), discussed *infra*[2] (specifying arson as a "crime of violence"

---

[2]I note that in 1997 the codification for the definition of a crime of violence was changed from §§ 4B1.2(1)(i) and (ii) to §§ 4B1.2(a)(1) and (2), The text of the guidelines was not changed, however, so the pre-1997 cases discussed later refer to the same definition that is currently applicable.

because it could result in serious physical injury to another).

### III. APPLICATION OF A FEDERAL STANDARD TO ASSESS ARSON INRELATION TO A "CRIME OF VIOLENCE" UNDER SECTION 101(A)(43)(F)

In *Taylor v. United States, supra*, the Supreme Court addressed the need for a federal definition of the crime of "burglary," which was designated under 18 U.S.C. § 924(e) as a "violent felony" for purposes of sentence enhancement,[3] but lacked a single accepted meaning as used by the state courts. *Id.* at 579-80. The term "burglary," which previously had been defined by Congress in "the first version of the sentence-enhancement provision" under the Armed Career Criminal Act of 1984, Pub. L. No. 98-473, title II, § 1803, 98 Stat. 2185 (codified at 18 U.S.C. App. § 1202(a) (Supp. III 1985)) ("ACCA"), was not defined in subsequent enactments. *Taylor v. United States, supra*, at 581-82. The Court declined to conclude that every conviction under a state burglary statute, no matter how defined, constituted a "burglary" offense. *Id.* at 580.

Under *Taylor v. United States, supra*, it should be clear that we may not presume that every conviction under a state arson statute, no matter how defined, constitutes a crime of violence. We must, therefore, arrive at a federal definition of arson that recognizes the generic or categorical elements of the crime. While it is possible that we could construe the respondent's conviction under 18 U.S.C. § 16 without first settling on a uniform definition for arson, we still would need to determine whether the state offense for which the respondent has been convicted—first degree arson—constitutes a crime of violence. Any precedential value in terms of providing guidance with regard to how a conviction for "arson" is to be treated in relation to section 101(a)(43)(F) of the Act is linked, not to our construction of the Alaska statute alone, but to the framework we develop for defining arson generically.

The linear approach that I propose utilizes a three-step analysis. The first step is to evaluate the offense involved—in this case, "arson"—and to settle on what constitutes "arson" categorically for purposes of a uniform federal definition. The next step is to determine whether "arson," as we have defined it categorically, is a crime of violence. That is whether it necessi-

---

[3]Section 924(e) is found in the Firearms Owners' Protection Act, Pub. L. No. 99-308, § 104, 100 Stat. 449, 458 (1986), *amended by* Anti-Drug Abuse Act of 1986, Pub. L. No. 99-570, subtitle I, § 1402, 100 Stat. 3207, 3207-39 ("Career Criminals Amendment Act of 1986"). The original version of the statute provided that any convicted felon found guilty of possession of a firearm, who had three prior convictions "for robbery or burglary," was to receive a mandatory minimum sentence of imprisonment for 15 years, *Taylor v. United States, supra*, at 581.

tates the use of *physical force* against the person or property of another as an essential element of the crime, or whether, due to the inherent nature of the offense as defined, "arson" entails *a substantial risk* that the offender might use *physical force* against the person or property of another "*in the course of committing the offense*," as required under 18 U.S.C. § 16. (Emphasis added.)

The final step is to assess the state statute under which the respondent was convicted to ascertain whether or not his conviction constitutes "arson," as defined according to the uniform federal standard for the crime of arson. If the statute under which the respondent was convicted encompasses some conduct that can be said to constitute arson, but some conduct that would not constitute arson according to a uniform federal standard, the record of conviction must reflect that the conduct for which the respondent was convicted was a crime of violence. This means that the record of conviction must reflect that the crime for which the respondent was convicted involved physical force as an element of the offense or that there was a substantial risk such force may be used in the commission of the offense.

## A. Step One: Federal Definition of the Crime of Arson

There are four principal sources from which we can draw a uniform federal definition of arson for purposes 18 U.S.C. § 16. These include the common law meaning; the Model Penal Code definition. which is consistent with common usage; and two federal statutory sections, 18 U.S.C. § 81 and 18 U.S.C. § 844(i).

At common law, "arson" was "the *malicious burning* of the *house of another." Black's Law Dictionary* 111 (6th ed. 1990) (emphasis added) (explaining that this definition has been broadened by state statutes and criminal codes, and referring to the Model Penal Code as an example of the current definition of arson.)[4] Section 220.1 of the Model Penal Code provides that a person is guilty of arson if he starts a fire or causes an explosion **"***with the purpose of***: (a) destroying a *building or occupied structure of another*; or (b) destroying or damaging *any property, whether his own or another's, to collect insurance* for such loss**."** (Emphasis added.)

In addition, 18 U.S.C. § 844(i) provides in pertinent part:

> Whoever maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, *any building, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce* shall be imprisoned for not less than 5 years and not more than 20 years, fined under this title, or both . . . .

---

[4] In ordinary usage, "arson" is defined as "the crime of maliciously setting fire to the property of another or burning one's own property for an improper purpose, as to collect insurance." *See Webster's II New College Dictionary* 63 (1995).

(Emphasis added.) 18 U.S.C. § 81, "Arson within special maritime and territorial jurisdiction," reads in pertinent part:

> Whoever, within the special maritime and territorial jurisdiction of the United States, *willfully and maliciously sets fire to or burns, or attempts to set fire to or burn any building, structure or vessel*, any *machinery or building materials or supplies, military or naval stores, munitions of war*, or *any structural aids or appliances for navigation or shipping*, shall be fined under this title or imprisoned not more than five years, or both.

(Emphasis added.)

A comparison of the elements of these definitions reveals that the common law definition referred to conduct that entailed a willful and malicious intent and a burning, directed at the house of another. The Model Penal Code covers starting a fire or causing an explosion for the purpose of destroying a building or occupied structure of another, and also covers such damage to any property when collection of insurance is the motive. Section 844(i) maintains the common law requirement of malicious intent, and covers damage or destruction by fire or explosives to any real or personal property used in interstate or foreign commerce. Section 81 also maintains the willful and malicious intent requirement originating in the common law definition, and covers setting fire to or burning certain enumerated property such as buildings, structures, vessels, machinery, building materials, munitions, or navigation or shipping aids or appliances.

In determining a federal definition of "arson" for purposes of section 101(a)(43)(F) of the Act, I believe it prudent for us to follow the course set by the Supreme Court in *Taylor v. United States, supra*, at 598-99. Upon consideration of the common law and statutory definitions, I conclude that a uniform federal definition of arson for purposes of construing such an offense under the terms of 18 U.S.C. § 16 is best seen as a hybrid of the common law definition and §§ 81 and 844(i). First, there must be a willful and malicious intent, an element shared by all versions of the definition. *See, e.g., United States v. Doe*, 136 F.3d 631, 634 (9th Cir. 1998) (referring to § 81 as the "federal arson statute," and emphasizing that "[i]n the absence of any indication to the contrary, we must assume that when Congress adopted the common law definition of the crime of arson—the willful and malicious burning of a building—it intended to adopt the meaning that common law gave that phrase" (citing *Moskal v. United States*, 498 U.S. 103, 116-17 (1990))). Second, the property covered by the common law definition has been expanded to include the real property and other specified property such as dwellings, occupied buildings, vessels, machinery, and munitions; all personal property is covered under § 844(i) only when that property can be shown to be used in interstate commerce.

Third, the common law definition and the definition under the expanded Model Penal Code definition limit the property in question to that of

447

"another." Although the reach of neither § 81 nor § 844(i) is limited to the property of another, an assessment of the crime of "arson" for purposes of 18 U.S.C. § 16 imposes the limitation that the property must be that of "another." Thus, I believe a workable operating definition includes convictions that involve the willful and malicious destruction of the statutorily specified property of another by fire to be "arson."

### B. Step Two: Arson As a Crime of Violence According to a Federal Standard

It is important to understand that once it settled upon a uniform definition of burglary in *Taylor*, the Supreme Court did not need to determine whether burglary was a crime of violence by analyzing its elements in relation to the Armed Career Criminal Act, because the ACCA *specifically* lists "burglary" as a violent felony, *See* 28 U.S.C. § 924(e). Similarly, most recent federal circuit court opinions that have addressed offenses alleged to be "crimes of violence" have done so under the current version of § 4B1.2 of the United States Sentencing Guidelines, which specifically names certain offenses—including burglary of a dwelling, arson, or extortion, use of explosives or those that "otherwise involve[] conduct that presents a serious potential risk of physical injury to another"—as crimes of violence, *See* U.S.S.G. § 4B1.2(a)(2) (1998).

By contrast, a crime of violence as defined under 18 U.S.C. § 16, continues to require a showing of the use or risk of the use of physical force against the person or property of another in the course of committing the offense, and is distinct from a crime of violence as that phrase now is defined in the sentence enhancement context, *United States v. Innie*, 7 F.3d 840 (9th Cir. 1993) *cert. denied*, 511 U.S. 1042 (1994); *see Matter of Alcantar, supra*, at 806 n.3. It is critical that we do not confuse the designation of arson as an offense involving a serious risk of physical *injury* in sentencing enhancement cases, with the requirement that the use or risk of physical *force* must be demonstrated for an offense to be considered a crime of violence under 18 U.S.C. § 16.

### 1. Evolution of the Crime of Violence Concept: 18 U.S.C. § 16 and U.S.S.G. § 4B1.2 Compared

The phrase "crime of violence" was first introduced as a term of art by the Sentencing Reform Act of 1984, Pub. L. No. 98-473, title II, § 217(a), 98 Stat. 1987, 2017 (1984), which also created the United States Sentencing Commission, 28 U.S.C. §§ 991-998; *see also United States v. Parson*, 955 F.2d 858, 864-65 (3d Cir. 1992); *cf. Taylor v. United States, supra*, at 581-83, 587 (discussing the evolution of the term "violent felony"). In authorizing a body with a mandate to promulgate guidelines and policy statements

concerning sentencing of criminal offenders, Congress mandated that the guidelines the commission developed should impose a sentence to a term of imprisonment at or near the maximum term authorized for categories of defendants over 18 years of age who have been convicted of a felony that is a crime of violence, or an offense relating to specified controlled substance violations, 18 U.S.C. § 994(h) (1988).

Although 28 U.S.C. § 994 did not include a definition of a "crime of violence," Congress defined the term in a separate section of the Comprehensive Crime Control Act of 1984, Pub. L. No. 98-473, title II, § 1001(a), 98 Stat. 1837, 2136, codifying it as 18 U.S.C. § 16, as we know it today, *United States v. Parson, supra*, at 864.[5] In legal usage, "violence" is defined as follows: "Unjust or unwarranted exercise of force, usually the accompaniment of vehemence, outrage, or fury. Physical force unlawfully exercised; abuse of force; that force which is employed against common right, against the laws, and against public liberty. The exertion of any physical force so as to injure, damage or abuse." *Black's Law Dictionary* 1570 (6th ed. 1990) (citations omitted), Notably, Congress did not specify any particular crimes as constituting crimes of violence.

Shortly thereafter, the statutory definition of "crime of violence" used under the sentencing guidelines, was revised to include certain specific offenses, including arson, that were considered to be crimes of violence in relation to the risk of serious physical injury to another. Similarly, the Supreme Court noted in addressing 18 U.S.C. § 924(e)(2)(B)(ii), that "[t]he legislative history also indicates that Congress singled out burglary . . . because of its inherent potential for harm to persons." *Taylor v. United States, supra*, at 588, However, these later designations are not dispositive of our consideration of offenses for purposes of 18 U.S.C. § 16(b), which was not amended.

In determining whether an offense is a crime of violence as defined under 18 U.S.C. § 16, the Board has adopted the "generic" or "categorical" approach, *Matter of Alcantar, supra; see also United States v. Jackson*, 986 F.2d 312 (9th Cir. 1993); *United States v. Sherman*, 928 F.2d 324 (9th Cir.), *cert. denied*, 502 U.S. 842 (1991); *United States v. Springfield*, 829 F.2d 860 (9th Cir. 1987). We focus, not on inclusion of a specific offense by name in a statutory section, but on the inherent nature of the crime as defined in relation to the use or risk of force. *See United States v. Anderson*, 989 F.2d 310, 312 (9th Cir. 1993) ("To determine whether a crime is burglary, arson, or extortion, we must not look to whether it bears one of these

---

[5]The Senate Report accompanying the legislation states that the term "crime of violence" is "commonly used throughout the bill" and "accordingly the Committee has chosen to define it for general application in title 18." S. Rep. No. 98-225, at 307 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3486, *cited in United States v. Parson, supra*, at 864.

labels under state law . . . or whether it involves a risk of violence . . . [but to] the 'generic' definitions of burglary, arson, or extortion.").

This is consistent with the approach followed by the Ninth Circuit in which this cases arises. In *United States v. Innie, supra*, at 849, the Ninth Circuit recognized:

> "The amendment [away from the terms of 18 U.S.C. § 16] shifted the emphasis f*rom an analysis of the 'nature' of the crime* charged *to an analysis of the elements of the crime charged or whether the actual charged 'conduct' of the defendant presented a serious risk of physical injury* to another."

*Id.* at 849 (emphasis added) (quoting *United States v. Sahakian*, 965 F.2d 740, 742 (9th Cir. 1992)). The court further stated:

> Under the 1989 Guidelines, we must apply the "so-called 'categorical approach'" to determine whether Innie's predicate conviction as an accessory after the fact to murder for hire was a crime of violence, *See Becker*, 919 F.2d at 570. In doing so, we "do not look to the specific conduct which occasioned [Innie's] conviction, but only to the statutory definition of the crime."[6]

*Id.* (quoting *United States v. Becker*, 919 F.2d 568, 570 (9th Cir. 1990)).

## 2. Physical Force and Physical Injury Distinguished in Practice

The ultimate question in determining whether generic arson constitutes a crime of violence is whether physical force is an essential element of the generic arson offense, or whether there is a substantial risk it will be used in the course of committing such an offense. The majority provides no reasoning why arson, by its nature, involves a risk that physical force may be used against the person or property of another in the course of committing the crime, other than to say that there is always a "risk to items" on the property, and a risk that the fire may spread or that firefighters or others responding to the fire will be injured.

These explanations are little more than conclusions why someone else's *property might be harmed*, and why other *persons might be injured*. They do not explain how arson necessarily entails the use of physical force against the person or property of another, or how the nature of the offense inherently entails a substantial risk such force may be used against the person or property of another.

---

[6]The Ninth Circuit noted that "[t]o help define what constitutes a 'category' of criminal conduct for purposes of the [former version of the] Guidelines, this circuit has looked to cases interpreting the nearly identical language of the Armed Career Criminal Act, 18 U.S.C. § 924, *Becker,* 919 F.2d at 570, Subsection (i) of the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B), is identical to subsection (a) of 18 U.S.C. § 16." *United States v. Innie, supra*, at 849 n.6.

Moreover, while the provisions that govern the application of the sentencing guidelines include designations of offenses that are considered to be "crimes of violence," it is important to recognize the difference in terminology. The sentencing guidelines now refer to the risk of physical *injury*, while 18 U.S.C. § 16 continues to refer to the use of physical *force*. The legal distinctions between physical force and the risk of harm or injury are significant. As the Third Circuit noted in *United States v. Parson*,

> At first blush, the difference in phrasing appears trivial because most physical injury comes from the use of physical force. But the distinction is significant, Use of physical force is an intentional act, and therefore the first prong of both definitions requires specific intent to use force. As to the second prong . . . a defendant's commission of a crime that, by its nature, is likely to require force similarly suggests a willingness to risk having to commit a crime of specific intent. For example, a burglar of a dwelling risks having to use force if the occupants are home and hear the burglar. . . ,
>
> In contrast, under the second prong . . . criminals whose actions merely risk causing physical injury may have a lower mens rea of "pure" recklessness . . . . For example, a parent who leaves a young child unattended near a pool may risk serious injury to the child . . . . In this case, the crime of reckless endangering necessarily involves a serious risk of physical injury to another person, but not necessarily an intent to use force against other persons.

*United States v. Parson, supra*, at 866.

### (a) Use of Physical Force in Relation to Arson

To provide a satisfactory explanation why arson is crime of violence under 18 U.S.C. § 16, however, there must be a showing either that the use of "physical force"—and not merely the risk of injury or harm—is essential to the accomplishment of the crime, or that there is a substantial risk it will be used in the course of committing the "arson" crime. As the Ninth Circuit correctly concluded, there is a difference between the nature of the offense and the conduct of the perpetrator, *United States v. Sahakian, supra*, at 742.[7] Physical force and injury or harm are not the same.

"Force" is defined as follows: "Power, violence, compulsion, or constraint exerted upon or against a person or thing. . . . strength directed to an end. Commonly the word occurs in such connections as to show that unlawful or wrongful action is meant . . . ." *Black's Law Dictionary* 644 (6th ed. 1990) (citation omitted), "Physical force" is "[f]orce applied to the body;

---

[7]The Ninth Circuit recognizes that under the current version of the Guidelines, "[i]n determining whether an offense 'involves conduct that presents a serious potential risk of physical injury to another,' U.S.S.G. § 4B1.2(1)(ii), courts may consider the statutory definition of the crime and . . . the conduct 'expressly charged [ ] in the count of which the defendant was convicted.' U.S.S.G. § 4B1.2, comment (n.2)." *United States v. Young*, 990 F.2d 469, 472 (9th Cir.), *cert. denied*, 510 U.S. 901 (1993).

actual violence." *Id.* at 1147. By contrast, an "injury" is defined as "any wrong or damage done to another either in his person, rights, reputation or property; the invasion of any legally protected interest of another." *Id.* at 785, As indicated above, "violence" includes an unjust or unwarranted use of force, exerted unlawfully with vehemence, outrage, or fury to injure, damage, or abuse. *Id.* at 1570. It therefore appears to incorporate the active concept of "force" rather than the passive concept of "injury."

Does the intentional *striking* of a match, or *spreading* of an explosive or combustible material, constitute "physical force"? If so, why is physical force not an element of the offense of arson? In that case, arson could readily be classified under 18 U.S.C. § 16(a), so long as the match striking, or gasoline spreading was against the person or property of another.

In other words, maliciously striking a match to burn my law degree after placing it in my fully paid-for hibachi grill, arguably may involve physical force as an element of the offense, but if it is not directed at the property of another, it would not qualify as a crime of violence under 18 U.S.C. § 16. In addition, even if it were someone else's law degree, and my conduct was sufficient to establish that element of arson according to a federal definition, my malicious burning must be against the types of property that reasonably could be said to be encompassed in a federal definition. These types of property would include real or personal property, such as a law degree, only if the statute under which I was convicted necessarily required a showing that such an item was used in interstate commerce, or in the alternative, that it was classifiable among the types of property referenced in 18 U.S.C. § 81.

Or, is it the fire itself—undeniably a "force" of nature, although not necessarily the product of willful intent—that, started as a means of damaging or destroying property, is the physical force? Certainly, the fact of a burning is an essential element of the offense of arson under any definition. Again, if that is the case, arson as generically defined could be classified under § 16(a), so long as the fire or the burning was employed against the types of property referred to in an accepted federal definition of arson, and it was against the person or property of another.

### (b) "Substantial risk . . . in the course of committingthe offense"

Assuming I burn my law degree, is there a substantial risk that either striking the match or the fire, as a physical force, will be used against the person or property of another in the course of my burning my own property? And if so, used by whom?

I have difficulty seeing how, if my setting fire to my own property constitutes arson, there remains a substantial risk that force will be *used* against my neighbor's property *in the course of (my) committing the offense*. The

offense is accomplished when I start the fire that burns my property, and the same is true if I burn the property of another. I already have committed the offense by starting the fire. What, exactly, is going to occur "in the course of committing the offense" that constitutes the use of physical force against the person or property of another?

Unlike the language of § 4B1.2 of the sentencing guidelines pertaining to the risk of serious injury to another, 18 U.S.C. § 16(b) does not describe the consequences caused by the perpetrator. The language of 18 U.S.C. § 16(b) suggests that the force used in the "course of *committing* the offense" is going to be used by the offender. "Committing" is an active verb in the gerund form that describes what the perpetrator does, Congress' inclusion of the phrase "substantial risk" adds to this reading by suggesting that it is I who is likely to do something beyond what is necessary to commit the offense, in order to carry out the offense. This reading is substantiated by the Ninth Circuit's phraseology in *United States v. Springfield, supra*, in which the court states that the second prong of the crime of violence definition covers offenses such as robbery, that "'by their nature' create a situation in which it is likely that the criminal may resort to physical force *to accomplish the criminal end*." *Id.* at 863.

Suppose there is a city or state ordinance making it unlawful to burn trash other than at the city dump? Is there a substantial risk that the property of another might be harmed or some person might be injured if I burn the trash in my backyard, or at the curb in front of my home? Perhaps, It is possible the neighbor children will suffer burns when they try to jump in or through the smoldering pile. Assuming the risk of harm or injury is substantial, is this possible *consequence* of my actions the same as a substantial risk that *physical force* may be used in the *commission* of the crime? No. *Cf. United States v. Becker, supra*, at 571 n.5 (finding that in every case of *first* degree burglary there is a substantial risk that force will be used against the person or property of a lawful occupant of the dwelling).

Reading *Springfield* and *Becker* together, I do not see how my burning personal property, which is accomplished when I start the fire and may be a crime (as it is in Alaska) if my actions endanger another person, involves a "substantial risk that physical force may be used against the person or property of another in the course of committing the crime." Similarly, the Ninth Circuit concluded that the accessory offense cannot be considered a crime of violence as defined in 18 U.S.C. § 16(b), because it could not be shown that in every case there was a substantial risk that force would be used. *United States v. Innie, supra*, at 850.

### 3. Lack of Specific Controlling Authority

The majority invokes two cases cited by the First Circuit in *Mitchell v. INS*, 23 F.3d 1 (1st Cir. 1994), which itself contains no analysis of arson as

a crime of violence, but states that "[a]ny such argument [to the contrary] would have been plainly unavailing." *Id.* at 2 n.3, One of those cases, *United States v. Marzullo*, 780 F. Supp. 658, 662-65 (W.D. Mo. 1991), construes the crime of arson as set forth in 18 U.S.C. § 844(i) and concludes that "[i]t seems beyond question that the application of fire or explosives to a building . . . is tantamount to applying physical force against the property." *United States v. Marzullo, supra*, at 663. This appears to be a case addressing force as an essential element of arson, and, as such, is limited to the property of another. Moreover, no reasons why this is so are provided, and the decision only proceeds to refer, not to fire or explosives as constituting a "physical force," but to the types of harm to persons and property that might ensue.

In the other case, a district court in *United States v. Shaker*, 665 F. Supp. 698, 702 n.4 (N.D. Ind. 1987), adopted a magistrate's order construing a violation under 18 U.S.C. § 844(i), in which a death occurred, as falling under either 18 U.S.C. § 16(a) or (b). Neither of these cases is controlling in the instant case, which arises in the Ninth Circuit, and none really analyzed arson in relation to the specific elements articulated by Congress in 18 U.S.C. § 16.

By contrast, in *United States v. Damon*, 127 F.3d 139 (1st Cir. 1997), the First Circuit revisited its decision in *Mitchell v. INS, supra*, which had been affirmed in theory in the circuit's 1992 decision in *United States v. Harris,* 964 F.2d 1234 (1st Cir. 1992), and concluded that "[i]n light of *Taylor* and changing definitions from the Sentencing Commission, we think the district court was precluded from looking so deeply into the nature of the predicate offense. That the court thought it permissible to do so . . . *as we now clarify, was wrong." United States v. Damon, supra*, at 144 (emphasis added.) *Damon* involved a case in which the defendant "had attempted to 'sell his house to the insurance company' (as this activity is commonly described) by burning it." *Id.* (footnote omitted). Although the record contained this evidence, the court limited its review to the subsection of the state statute under which it believed that the defendant had been convicted and concluded that the offense was not a crime of violence.

My problem with the concept of finding that a substantial risk to the person or property of another exists in the course of committing arson is that it seems to me that either arson involves the use of force against another as an essential element of the arson offense, or it does not. Unlike certain other offenses such as burglary, in which the risk of force is not attached to the act of burglarizing, but can be anticipated if homeowners confront the burglar in their home, or the burglar carries a weapon, generic arson is accomplished, at a minimum, when the fire is set. Therefore, if I am intent on burning down my neighbor's house, and my striking a match, spreading the gasoline, or the fact of the fire itself constitutes the physical force used

against that property, there certainly is a substantial risk I will use such force because such force is an essential element of the offense I am committing, *Cf.* 18 U.S.C. § 16(a). I cannot find there to be a substantial risk that I would use some additional physical force of a different kind, as a surprised burglar might use, if my intent was to damage either my neighbor's property or my own property by fire.

Thus, I conclude that the consequential damage or harm or injury that might occur as the result of my burning my own property is not attributable to the substantial risk that I will use physical force against the person or property of another to accomplish the crime, *Cf.* 18 U.S.C. § 16(b). Assuming starting the fire or the burning itself is physical force, physical force is being used when I set my property ablaze. This is markedly different from the burglary and other offenses that have been interpreted as inherently carrying a substantial risk that physical force will be used in the course of committing the underlying offense.

## IV. STEP THREE: ARSON IN THE FIRST DEGREE UNDER THE ALASKA STATUTE ASSESSED IN RELATION TO THE FEDERAL STANDARD

According to respondent's counsel, and to my own reading of the Alaska state provisions (on their face and as interpreted in the context of jury instructions), a conviction under the Alaska statute for arson in the first degree requires evidence of 1) the intent to damage property by fire or explosion, and 2) recklessness, resulting in the risk of serious physical injury to another person. The Alaska Court of Appeals explained that the definition of first degree arson was amended by the Alaska legislature to reflect the view that the prohibition against arson is mainly to protect the safety of persons, rather than property. *Mossberg v. State*, 733 P.2d 273, 275 (Alaska Ct. App. 1987).[8] This means that if I set either my own or someone else's garbage can on fire, and that act endangers others, or as the statute puts it, results in the risk of serious physical injury to another, I will be convicted in Alaska.

Under these circumstances, the use of *physical force* by the respondent

---

[8]The former version of arson found in the Alaska Penal Code included in its definition of first degree arson "all acts of arson committed in 'a dwelling house, whether occupied, unoccupied or vacant, or a kitchen, shop, barn, stable or other outhouse that is a part of a dwelling, or belongs to or adjoins a dwelling. . . .'" *Mossberg v. State, supra*, at 275 (quoting former Alaska Statutes 11.20.010). The Court of Appeals explained that the statute was amended to reflect the fact that first degree arson was meant to punish behavior that put the safety of persons at risk, *Id.*

against *another* does not appear to be a necessary element of the offense of intentionally damaging property by "*starting* a fire" or "*causing* an explosion," *cf.* 18 U.S.C. § 16(a), and the majority does not contend that is a necessary element of the offense as defined. As discussed above, the federal definition of "arson" is narrower in certain respects than the Alaska "arson" statute, under which the respondent could be convicted of setting fire to any type of property with the intent to damage it, so long as there is a risk of serious harm to another person. Similarly, the federal definition of a crime of violence is more narrow than arson under the Alaska statute, as the intent to damage property, and the "force" used to carry out that intent, can be directed at one's own property.

Put another way: The Alaska statute allows a conviction for conduct that does not constitute "arson" under a federal standard, because the conduct punished under Alaska law is not limited to the types of property designated in 18 U.S.C. § 81 and requires no proof that the property is used in interstate commerce, as would be required under 18 U.S.C. § 844(i). Furthermore, a conviction for "arson" is not limited to burning the property of *another,* as the common law and Model Penal Code definition require, and as 18 U.S.C. § 16(a) would require. Thus, assuming it might otherwise constitute "arson" according to a federal standard, a conviction for arson under the Alaska statute does not constitute a crime of violence, because 1) there is no requirement that physical force must be used to commit the offense, and 2) even if the fire is a "physical force," the statute does not require that it be used against property (as defined in § 81, or in § 844(i)), or against the person or property of another. *Cf. Taylor v. United States, supra*.

Inasmuch as it is undisputed that the terms of 18 U.S.C. § 16(a) do not apply, the only basis on which the respondent would be deportable under section 101(a)(43)(F) of the Act is under § 16(b), which requires us to find that first degree arson under the Alaska statute necessarily entails a "substantial risk that physical force may be used against the person or property of another in the course of committing the offense." Given the nature of arson as defined in the Alaska statute, I see no basis on which to conclude that there is a substantial risk that physical force may be used "in the course of committing the offense." Although the statute requires that intentionally damaging property by starting a fire recklessly places another person in danger of serious physical injury, that consequence does not require the use of physical force, and the property that is or may be damaged is undifferentiated. In other words, if I intentionally burn my law degree, or the trash, and the children next door come too close to the fire and get burned, my starting the fire recklessly may have placed them in danger of serious physical injury. It does not entail a substantial risk *I* will use either the fire or any other type of physical force against those children or anyone else in the course of burning my personal items.

456

## V. CONCLUSION

Technically, these are not my arguments to make. They are not the arguments of the respondent to make, either, although the respondent has made them. They are the Service's arguments to make, as the Service bears the burden of proof.

I make them in the complete void presented by the failure of the Service to advance any legal position supported by authorities of any kind, Moreover, if the party bearing the burden of proof is not going to advance any authority, I question why my colleagues in the majority are so willing to jump in, ignore the respondent's appellate position, and draw a conclusion with such minimal reasoning.

Having examined the record in this case, I do not believe that merely by submitting evidence of the respondent's conviction—*assuming* the respondent received adequate notice of the specific aggravated felony grounds underlying the removal charges against him—the Service has met its burden of proving by clear and convincing evidence that the respondent has been convicted of a crime of violence. *Cf.* section 240(c)(3)(A) of the Act (assigning the burden of proof to the Service); section 240(c)(3)(B) of the Act (indicating documents or records that constitute proof of a conviction). I cannot agree that simply citing one or two district court cases, or an out-of-circuit case that refers to these district court cases, is an adequate basis on which to found a decision by the Board that is required to be reasoned, *Cf.* section 240(c)(3)(A) of the Act. Fortunately, this respondent has access to the federal circuit court for review of his legal arguments, de novo. *See Coronado-Durazo v. INS*, 123 F.3d 1322 (9th Cir. 1997); *Valderama-Fonseca v. INS*, 116 F.3d 853 (9th Cir. 1997); *see also Magana-Pizano v. INS*, 152 F.3d 1213 (9th Cir. 1998).